**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| LONNIE J. GRAMMER, individually and on behalf of others similarly situated, | ) ) ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| Plaintiff | ) ) | **FLSA COLLECTIVE ACTION COMPLAINT UNDER** |
| vs. | ) | **29 USC § 216(b)** |
| | ) | |
| WRIGHT OF INDIANA, LLC, | ) | **CASE NO.** 1:20-cv-3041 |
| | ) | |
| Defendant | ) | |

*PLAINTIFF'S COMBINED CLASS ACTION AND FLSA COLLECTIVE ACTION*
*COMPLAINT FOR DAMAGES*

*I.  INTRODUCTION*

Plaintiff Lonnie J. Grammer ("Grammer") brings class action and individual claims under the Indiana Wage Payment Statute and FLSA collective action claims against his employer, Defendant Wright of Indiana, LLC ("Wright") to address class-wide wage and hour and overtime violations committed by Wright against Grammer and his fellow Flagger employees.  Grammer will serve as the representative plaintiff in the Rule 23 class action and FLSA collective action.

Specifically, Wright has been systematically underpaying wages and overtime wages to Grammer and similarly situated Flagger employees in several ways.  Wright pays its Flaggers at an hourly rate of pay, but Wright has been substantially underpaying wages to Flaggers by failing to pay on a continuous workday basis.  Wright is not paying Flaggers from the moment of their first principal work activities - typically either 1) the moment the Flagger's work travel time exceeds the normal work commute time or becomes outside the normal commuting area for

1

his employer's business or 2) the time the Flagger began work at an assigned meeting location designated by Wright - through the last principal work activity of the day - typically either 1) the moment the employee ended his work day by returning to the designated meeting location and completes final work tasks, or 2) the moment the Flagger's return travel at the end of the work day enters the scope of his normal work commute time or becomes within his normal commuting area for his employer's business.

Grammer's class action and FLSA collective action claims based upon Wright's class-wide failure to pay employees' based upon a continuous workday will be perfect for class and/or collective action treatment and will be easy to prove.  Most of Wright's wage and hour violations will be will be shown on the face of pay stubs Wright issues to its employees and on Wright's time sheets showing hours of employee work.

## II.  FACTUAL ALLEGATIONS

1.      Grammer is a resident of the State of Indiana and is currently domiciled in Peru, Miami County, Indiana.  Earlier in 2020, Grammer resided in Kokomo, Howard County, Indiana.  During the first week after he was first hired by Wright (in early February 2020), Grammer resided in Greencastle, Putnam County, Indiana.

2.      Defendant Wright of Indiana, LLC is a foreign limited liability company with a principal office address listed with the Indiana Secretary of State as 1200 Sharon Road, Suite 1, Beaver, Pennsylvania 15009.  Grammer worked for Wright from its Indiana office located at 5420 Rock Hampton Court, Indianapolis, Indiana 46268.  Wright is a traffic control service that employs safety workers such as Flaggers who protect utility workers.

3.      Flaggers set up traffic cones, traffic safety signs, hold signs and take other safety

measures to protect employees of customers who are performing utility work and other roadside work.  Wright employs hundreds of Flaggers to perform work for it throughout and around the State of Indiana.  Wright routinely and regularly dispatched Grammer and all other Flaggers to work on roadside projects at places in Indiana that were far and many hours of drive time from Wright's Indianpolis office and from the employees' homes.

4.      Grammer was hired by Wright as a Flagger in early February 2020 and remains employed.  Shortly after he was hired, Wright assigned Grammer a company truck[1] for use with his work.  Grammer drove the truck home with him each night and drove from home to work meeting places at the start of each work day.  Wright instructed Grammer to use his work truck to transport traffic cones, work signs and other necessary safety equipment for his and other Flaggers' use at roadside work sites around the State of Indiana.  Wright has promoted Grammer to a Lead Flagger position.  Grammer also fills out time sheets and other paper work for Flaggers on his team as part of his job.

5.      During his employment with Wright, Grammer has resided at addresses that are roughly one hour's drive time from the Wright office in Indianapolis.  Grammer's normal commute area from home to his employer's Indianapolis office would be approximately one hour's drive time at the beginning of each work day and the end of each work day.

6.      At all times during his employment with Wright, Grammer has been paid wages on an hourly basis and treated as a non-exempt employee.

7.      Wright has intentionally, knowingly, with reckless disregard and systematically

---

[1]The truck Wright assigned to Grammer and the trucks assigned to all Flaggers are pickup trucks. All of the company pickup trucks weigh less than Ten Thousand (10,000) pounds.

violated its Flaggers' rights to earned overtime through Wright's unlawful overtime calculation and payment policies.

8.      Wright is creating wage and hour and overtime violations by failing to pay Grammer and his similarly situated Flagger coworkers for all hours of work each week.  Wright pays its Flagger employees at an hourly rate of pay, but Wright has been substantially underpaying wages to Flaggers by failing to pay on a continuous workday basis.  Specifically, Wright is not paying Flaggers from the moment of their first principal work activities - typically either 1) the moment the Flagger's work travel time exceeds the normal work commute time or becomes outside the normal commuting area for his employer's business or 2) the time the Flagger began work[2] at an assigned meeting location designated by Wright - through the last principal work activity of the day - typically either 1) the moment the employee ended his work day by returning to the designated meeting location and completes final work tasks, or 2) the moment the Flagger's return travel at the end of the work day enters the scope of his normal work commute time or becomes within his normal commuting area for his employer's business. This systematically creates significant unpaid wage and overtime violations each week, causing each Flagger to lose hours per week in paid wages.

9.      All of the time Wright's Flagger employees spend at work, from first to last principal activity of each day, is work time and must be compensated under the law.

10.     Pursuant to its systematic, class-wide practice, Wright is not compensating its hourly-paid Flagger employees for all work time at the beginning of each employee's shift and at

---

[2]Grammer and all of his Wright coworkers were required to meet at employer-designated meeting locations to receive instructions for the day's work, to pick up and load equipment, and to perform other initial work tasks.

the end of each employee's shift.

11.     Wright intentionally and knowingly violated Grammer's and all Flagger employees' rights to earned wages through Wright's conscious and deliberate decision not to pay employees for all work time.

12.     Grammer can provide a specific example.  During the one week pay period from March 9, 2020 to March 15, 2020, Grammer was living in Kokomo, Indiana and was driving to work at job sites in and around Terre Haute, Vigo County, Indiana.  If he encountered light traffic and took the quickest route, Grammer's drive time from his home in Kokomo to the employer designated meeting location at 701 Fruitridge Avenue, Terre Haute, Indiana took two hours and ten minutes (2:10).  Grammer's round trip from home to the Terre Haute meeting location each day this week took at least four hours and twenty minutes (4:20).  Grammer was driving his Wright work truck for work purposes and work travel at least two hours and twenty minutes (2:20) per work day greater than his normal commute time (one hour each way) and outside of Grammer's normal commuting area.  Grammer's pay stub for this work week and his time sheets for this work week indicate that Grammer was paid for 53.00 hours of work and that Grammer drove round trip from his home to the same meeting location at 701 Fruitridge Avenue, Terre Haute, Indiana on 4 different days.  Wright did not pay Grammer at all for the nine hours and twenty minutes that were greater than his normal commute time and outside his normal commuting area.  These additional nine hours and twenty minutes were all compensable work hours.  All were overtime hours, as well, over and above the 53.00 hours Wright did pay Grammer for the work week.  At that point in time, Wright paid Grammer a base rate of pay at $12.50 per hour.  His base overtime rate of pay was $18.75 per overtime hour.  Wright owed

Grammer at least an additional $175.00 in overtime for the work week.  Under the FLSA, that figure would be doubled with a presumptive liquidated damage to $350.00.  Under the Indiana Wage Payment Statute, the nine hours and twenty minutes would be owed at Wright's $12.50 per hour base rate of pay, for a total of $116.67.  With liquidated damages under I.C. 22-2-5-2, Wright owes Grammer damages of $350.00 for this one work week.

13.     For purposes of a separate example of wage violations, using the same one week pay period from March 9, 2020 to March 15, 2020, Grammer was required to report and begin working and performing work tasks at an employer designated meeting location at 701 Fruitridge Avenue, Terre Haute, Indiana.  From that designated meeting location, Grammer and his Wright coworkers on his crew were required to drive to the work site for the day in other areas of Vigo County.  On two of the four days, Grammer and coworkers, had to drive from the employer designated meeting location at 701 Fruitridge Avenue, Terre Haute, Indiana to a job site at 5621 E. Cottom Drive, Pimento, Vigo County, Indiana, a distance of 15 miles and a drive time of at least 23 minutes each direction.  Wright did not pay Grammer and his coworkers for this work time spent driving from or returning to the designated meeting spot within the middle of their respective continuous workdays.  This failure to pay Grammer and his coworkers for the work time spent driving from the designated meeting place to the actual job site resulted in Grammer and each coworker being underpaid wages and overtime wages of at least two to three hours for the work week over the four days.  These additional two to three hours were all compensable work hours.  All were overtime hours, as well, over and above the 53.00 hours Wright did pay Grammer for thatwork week.  At that point in time, Wright paid Grammer a base rate of pay at $12.50 per hour.  His base overtime rate of pay was $18.75 per overtime hour.  Wright owed

6

Grammer at least an additional $37.50 in overtime for the work week.  Under the FLSA, that figure would be doubled with a presumptive liquidated damage to $75.00.  Under the Indiana Wage Payment Statute, the two hours would be owed at Wright's $12.50 per hour base rate of pay, for a total of $25.00.  With liquidated damages under I.C. 22-2-5-2, Wright owes Grammer damages of $75.00 for this one work week.

14.     Wright is similarly underpaying wages and overtime compensation to all of Grammer's similarly situated Flagger coworkers by failing to pay wages for hours and/or overtime hours for all work time spent in work travel outside and over and above normal commuting times and also for work travel from designated meeting locations to actual job sites that occurs during continuous workdays.

15.     During many calendar weeks in 2020, Grammer worked in excess of forty hours and was owed additional overtime compensation based upon Wright's unlawful failure to pay Grammer for all of his compensable work hours.  In every work week, Grammer and his fellow Flagger employees lost wages as a result of Wright's failure to pay for all work hours. Moreover, in every work week involving more then forty hours of work, Grammer and his fellow Flagger employees lost overtime wages as a result of Wright's failure to pay for all work hours.

16.     Grammer is expressly alleging that Wright acted in bad faith in violating its Flaggers' rights under the FLSA and the Indiana Wage Payment Statute, and that Wright certainly did not seek to comply with the Indiana Wage Payment Statute in good faith.

17.     By way of this Complaint, Grammer seeks for himself and for all other similarly situated Flagger employees all unpaid wages, all unpaid overtime, all available statutory

damages, including all liquidated damages, and payment of his reasonable attorneys' fees, costs and expenses.

### III.   CLASS AND COLLECTIVE ACTION ALLEGATIONS

18.     Grammer incorporates herein by reference paragraphs 1 - 17 above.

19.     Grammer is pursuing claims individually, but this Complaint is brought also as a collective action and as a class action on behalf of other current and former Wright employees who were similarly denied payment of wages and overtime compensation under Wright's compensation scheme that resulted in the failure to pay for all work time from the first principal activity each day through the last principal activity.

20.     This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Grammer and all Wright current and former Flagger employees who were damaged by Wright's compensation system which required and resulted in significant uncompensated work and overtime violations.  By virtue of the "collective action," Grammer represents the identical and/or similar interests of former and current coworkers denied wages and overtime compensation under the same circumstances.  Grammer anticipates that other Wright employees and former employees will opt in to the action.

21.     With respect to FRCP 23(b)(3) class action claims under the Indiana Wage Payment Statute, Grammer will serve as class representative over a proposed class.  The class will be as follows:

> Grammer will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute.  This Court has supplemental jurisdiction over Grammer's Indiana statutory wage claims.  This action is filed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Grammer and on behalf of all eligible Wright current and former Flagger employees (who voluntarily resigned) who work or worked for the company and were damaged by Wright's compensation

8

system which required and resulted in uncompensated work performed by hourly-paid employees.  By virtue of the class action, Grammer represents the identical and/or similar interests of former and current coworkers denied wages under the same circumstances.

22.     Based upon information and belief, the number of potential class members is believed to be multiple hundreds of individuals, however, the actual number of Wright's current and former employees who will be members of this collective action/class action is so great (numerosity) that joinder of all members is impractical.  Instead, Grammer will pursue discovery to obtain the names of the other current and former Wright employees, to provide notice of the collective action, and to offer the opt in opportunity, and to provide notice of the class action and to offer the opt out opportunity.

23.     Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group/class.

24.     Grammer's claims are typical of the claims of the whole collective group of current and former Wright hourly-paid Flagger employees harmed by Wright's illegal wage practices.  Grammer's claims are typical of the claims of the whole class of current and former Wright hourly-paid Flagger employees harmed by Wright's illegal wage practices.

25.     Grammer will act to fairly and adequately protect the interests of the entire collective group of current and former Wright employees.  Grammer will act to fairly and adequately protect the interests of the entire Rule 23 class of current and former Wright employees.

26.     A "combined"[3] collective action/class action is superior to other available means for the fair and efficient prosecution of these wage claims against Wright.  For example, to prove

_____

[3]See *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-974 (7th Cir. 2011)

Wright's illegal wage practices, Grammer and other members of this collective group/class would seek in discovery records about all similarly situated current and former Grammer Flagger employees who were similarly denied earned wages and overtime compensation under Wright's compensation system which required and resulted in uncompensated work and underpayment of overtime wages.  Individual lawsuits by the members of the collective group/class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

27.    A determination regarding the "similarness" of those able to participate in the collective action/class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of FLSA and Indiana statutory and contractual wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA and Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

28.    A combined collective action/class action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

29.    Because Wright's compensation system which required and resulted in uncompensated work and underpaid overtime wages to hourly-paid employees results in wage violations that trigger issues of both federal and state law, this cause of action presents the ideal factual scenario supporting the Court's exercise over the supplemental state law claims, as

common state and federal law issues predominate.

### IV.  JURISDICTION AND VENUE

30.     This Court has jurisdiction over Grammer's FLSA claims under 28 USC § 1331

as those FLSA claims raise questions of federal law.  See 29 USC § 201 et seq.   The Court has

supplemental jurisdiction over Grammer's Indiana law claims, which have a common basis in

fact with his own and the other Plaintiff class members' FLSA claims.

31.     This Court is the appropriate venue for this cause of action as Grammer worked

or works for Wright at locations throughout the territory covered by the Southern District of

Indiana and Wright has its headquarters located in Indianapolis, Marion County, Indiana.  Most

of the illegal activity took place in the Southern District of Indiana.  28 USC § 1391.

### V.  STATEMENT OF CLAIMS

#### A.  Fair Labor Standards Act Claims

32.     Grammer incorporates herein by reference paragraphs 1 through 31 above.


33.     Wright is an "enterprise" as that term is defined by the FLSA, and Wright is

covered by the overtime and minimum wage provisions of the FLSA.  Wright is an "employer,"

as that term is defined by the FLSA.  Finally, Wright is a "person" as that term is defined by the

FLSA.

34.     Wright violated Gammer's rights and the rights of all members of the Plaintiff

Class to be properly paid overtime wages in a manner required by the FLSA.  Wright has

committed overtime violations by failing to pay Grammer and his similarly situated coworkers

for all overtime hours of work, particularly as Wright significantly underpaid overtime wages

based upon its unlawful failure to pay for all work hours from a first principal activity to a last principal activity each work day.

35.     Wright has repeatedly violated the FLSA's overtime provisions by not paying Grammer and members of the Plaintiff Class at the required overtime compensation rate for all hours worked over 40 in a work week.

36.     Wright's failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification, and subjects Wright to a three year statute of limitations.

37.     Grammer and the Plaintiff Class seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Wright's violations of their rights under the Fair Labor Standards Act.

### B.  Indiana Wage Payment Statute Claims

38.     Grammer incorporates herein by reference paragraphs 1 through 37 above.

39.     Grammer has a statutory wage claim arising under the Indiana Wage Payment Statute, I.C. 22-2-5 and he is the named Plaintiff who represents the same or similar interests of all current Wright hourly-paid Flaggers and all of Wright's former hourly-paid Flagger employees who voluntarily resigned from employment.

40.     By way of this Claim, Grammer is seeking, individually and on behalf of members of the Plaintiff Class of current and former Wright Flagger employees (who voluntarily resigned from employment), all available damages, including all unpaid wages, all underpaid

12

wages, all unlawfully deducted wages, all available liquidated (treble damages), all attorney's fees, costs and expenses, plus any other damage to which Grammer and his fellow Plaintiff Class members may be entitled pursuant to law.  Pursuant to I.C. 22-2-5-2, Grammer is seeking, individually and on behalf of members of the Plaintiff Class, payment of unpaid wages and underpaid wages, plus all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses. Grammer further expressly asserts and alleges that Wright acted in bad faith, and certainly was not acting or seeking to comply with the Indiana Wage Payment Statute in "good faith," when it intentionally created a wage scheme that did not compensate delivery drivers for all work hours from a first principal activity until a last principal activity each work day, all of which resulted in underpaid wages on a class-wide basis.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Grammer respectfully requests that the Court enter judgment against Wright and issue all available relief to him and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1. All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2. All damages available under the Indiana Wage Payment Statute, including all unpaid wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

3. All unpaid and underpaid wages;

4.      All reasonable attorney's fees and expenses;

5.      Costs;

6.      Prejudgment interest, if available; and

7.      Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@hkmlawfirm.com

WILLIAMSON CIVIL LAW, LLC

Aaron J. Williamson
Attorney No. 32803-49
8888 Keystone Crossing
Suite 1300
Indianapolis, IN 46240
(317) 434-0370
Facsimile: (765) 204-7161
aaron.williamson@wcivillaw.com